NOT DESIGNATED FOR PUBLICATION

Nos. 121,464
121,465

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DOMONIC RAY LEE MCKINZY SR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; JENNIFER L. MYERS, judge. Opinion filed October 1, 2021. Reversed and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Kayla L. Roehler*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., ATCHESON and WARNER, JJ.

PER CURIAM: Under Kansas law, any conviction that a defendant has before sentencing is counted in determining that defendant's criminal history score, unless that conviction is another count in the same case. This means that if a defendant pleads guilty to two crimes on the same day in two separate cases, the conviction in each case counts against the other case as a prior conviction. This is because both convictions have occurred before sentencing in each case. As we stated, any conviction that a defendant has before sentencing is counted in determining that defendant's criminal history score.

1

Does a defense attorney's failure to know of this longstanding sentencing rule and failure to tell the defendant of the sentencing consequences of pleading guilty to two unconsolidated felonies show lackluster advocacy that calls for the withdrawal of a defendant's guilty plea?

*As a result of plea negotiations, the defendant, on the same day, pled guilty to two serious crimes charged in separate cases.*

The State charged Domonic Ray Lee McKinzy Sr. with one count of first-degree murder for the stabbing death of his mother's husband. While he was in the Wyandotte County Detention Center awaiting trial on that charge, McKinzy fought with a deputy, who was searching his cell. The deputy was injured, and the State charged McKinzy in a separate case with aggravated battery of a law enforcement officer.

The district court appointed the same attorney to represent McKinzy in both cases. The parties, later, negotiated a plea agreement. Under that agreement, McKinzy would plead guilty to a reduced charge of one count of second-degree murder and one count of aggravated battery of a law enforcement officer. The agreement allowed McKinzy to argue for a durational departure and concurrent sentences. The agreement did not address McKinzy's criminal history score.

At the plea hearing the court told McKinzy about the maximum sentence he could receive:  if his criminal history score was A—the highest category—he could face 653 months in prison for the murder charge and 247 months in prison for the battery charge. McKinzy's attorney stated that those were the sentences "if you were an A, but you're not." The State said that it thought McKinzy's criminal history would be C in the second-degree murder case and B in the aggravated battery case, since his murder conviction would count towards his criminal history in the battery case. The court explained what that meant to McKinzy and then accepted his guilty pleas in both cases.

2

*Defense counsel, unaware of the sentencing rule about pleading guilty to two crimes in separate cases on the same day, learns of his lack of knowledge, realizes that he had failed to fully advise his client, and asks the court to allow the defendant to withdraw his pleas.*

When the presentence investigation reports in both cases were filed, they classified McKinzy's criminal history score as B in each case. This is because under our state's sentencing guidelines, multiple convictions on the same day in different cases count against each other for criminal history purposes at sentencing. See K.S.A. 2020 Supp. 21-6810(a), which defines a prior conviction for criminal history purposes as "any conviction, other than another count in the current case . . . which occurred prior to sentencing in the current case, regardless of whether the offense . . . occurred before or after the current offense or the conviction in the current case." So McKinzy's plea to second-degree murder counted against his criminal history in the aggravated battery case *and* McKinzy's plea in the aggravated battery case counted against his criminal history in the second-degree murder case.

This change of criminal history score upended McKinzy's possible sentences. For a severity level 1 felony such as second-degree murder, the difference between a criminal history score of C and B is substantial. A defendant with a score of C can receive a sentence between 258 and 285 months in prison. But a defendant with a criminal history score of B could receive a sentence between 554 and 618 months in prison. See K.S.A. 2017 Supp. 21-6804. That is a difference of 296 to 333 months between the two sentences based on a B criminal history score.

The night before the sentencing hearing, McKinzy's attorney filed identical motions to withdraw McKinzy's pleas in both cases. According to the motions, the attorney had told McKinzy that he would be classified as a C in the second-degree murder case and a B in the aggravated battery case because he had not thought that the separate cases would be counted against each other for criminal history purposes.

When the district court heard the motions, McKinzy's attorney explained he had advised his client that his criminal history would be C for the second-degree murder conviction and B for the aggravated battery conviction because he was "not thinking about the consequences . . . for the criminal history [of] the two cases crossing each other." The State responded that a defendant's failure to know their criminal history is not grounds for setting aside a plea. The State acknowledged that it had misspoken at the plea hearing—when it had said that it expected McKinzy's criminal history to be C in the murder case and B in the battery case. The State had later sent McKinzy's attorney a letter saying that McKinzy's criminal history would be B in both cases if he accepted the plea offer.

After denying both motions to withdraw his pleas, the court sentenced McKinzy to 618 months in prison for second-degree murder and a concurrent sentence of 216 months for aggravated battery of a law enforcement officer.

To us, McKinzy appeals the denial of his motions to withdraw his pleas. He argues that the district court abused its discretion because no evidence supported its conclusions, and it applied the wrong law. He also argues that the Kansas sentencing guidelines violate his state and federal constitutional rights because they allow judicial fact-finding of prior convictions, and those convictions enhance a defendant's sentence.

We will not address his second argument because the Kansas Supreme Court has recently rejected it, and we are bound by that court's decisions. See *State v. Albano*, 313 Kan. 638, 487 P.3d 750 (2021).

The law gives district courts the discretion to set aside a guilty plea at the defendant's request. K.S.A. 2020 Supp. 22-3210(d). Before sentencing, the defendant need show only "good cause." In turn, we review the district court's denial of such a request for an abuse of discretion. *State v. Herring*, 312 Kan. 192, 198, 474 P.3d 285

4

(2020). That means we would reverse only if the district court made a legal or factual error or if its decision was arbitrary or unreasonable. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

When courts consider whether a defendant has shown good cause or manifest injustice, they generally rely on the three factors:

- whether the defendant was represented by competent counsel;
- whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and
- whether the plea was fairly and understandingly made.

See *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), where the court applied those factors to a presentence motion to withdraw plea.

If the defendant moved to withdraw the plea before sentencing, then mere lackluster advocacy may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea. See *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010). But that term, "lackluster advocacy" is not very precise. It is better understood if the context of its creation is given.

We note that the *Aguilar* court begins by referring to the *Edgar* factors and explains why there are two levels of proof.

> "Although the *Edgar* factors permit counsel's competence or lack thereof to be one consideration when the motion is filed in the time period between conviction and sentencing, they should not be mechanically applied to demand that a defendant demonstrate ineffective assistance arising to the level of a violation of the Sixth Amendment. That level of proof may be suitable when the vehicle for relief is a K.S.A. 60-1507 motion attacking a defendant's *sentence*; and it may be logical and fair to equate the K.S.A. 22-3210(d) manifest injustice standard governing a post-sentence

5

plea withdrawal motion to the high burden imposed on a constitutional claim of ineffective assistance." *Aguilar*, 290 Kan. at 512-13.

The court moves on then, to examine the statute and explains that the burden on a presentencing motion to withdraw a plea is not high because it is a matter of discretion.

> "We note, however, that the plain language of the statute—'for good cause shown *and within the discretion of the* court'—should not be ignored. A district court has no discretion to fail to remedy a constitutional violation.
>
> "It is neither logical nor fair to equate the lesser K.S.A. 22-3210(d) good cause standard governing a presentence plea withdrawal motion to the high constitutional burden. The *Edgar* factors do not transform the lower good cause standard of the statute's plain language into a constitutional gauntlet. Merely lackluster advocacy—or, as here, evidence of an insurmountable conflict of interest among jointly represented codefendants that is ignored by a district judge—may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea. All of the *Edgar* factors need not apply in a defendant's favor in every case, and other factors may be duly considered in the district judge's discretionary decision on the existence or nonexistence of good cause." 290 Kan. at 513.

We think the district court here turned the plain language of the statute into a constitutional gauntlet.

This record shows that the defense counsel's performance can be fairly characterized as "lackluster" advocacy. This was not simply a case of miscalculating a criminal history score. McKinzy's attorney represented him while pleading to two high-level felonies, and the attorney did not know, let alone understand, that multiple convictions on the same day in different cases count against each other for criminal history purposes. And, more importantly, failed to inform McKinzy of this very important sentencing rule before entering pleas of guilty.

6

That has long been the rule in Kansas. See, e.g., K.S.A. 1994 Supp. 21-4710(a), which stated that a "prior conviction" includes multiple convictions entered on the same date in different cases for sentencing purposes for any of those convictions; *State v. Roderick*, 259 Kan. 107, 116, 911 P.2d 159 (1996); see *State v. Schow*, 287 Kan. 529, 544, 197 P.3d 825 (2008). *Schow* held that a miscalculated criminal history score potentially resulting from counsel's "failure to know or apply the current sentencing guidelines" challenged the attorney's competence under the first *Edgar* factor. *Schow*, 287 Kan. at 544.

The lack of knowledge of fundamental sentencing law and the resulting misunderstanding caused McKinzy's attorney to tell his client that he faced a far shorter prison term for a guilty plea than he really did. That was the real error here. McKinzy then pleaded guilty. Those circumstances raise a question about whether McKinzy's attorney provided competent representation.

The defense attorney told the court about his errors. We compliment his candor to the tribunal. But the court appears to have misunderstood what to do with the attorney's admissions. It appears to have ignored those admissions and focused on what McKinzy had said and not what his attorney said.

The court began its ruling on McKinzy's plea withdrawal motions by acknowledging that it needed to address the *Edgar* factors. On the first factor—whether the defendant was represented by competent counsel—the court said that it did not "believe there is any allegation of ineffective assistance of counsel." This conclusion ignores the defense counsel's admissions of error.

The State then interjected that it had found a relevant case, *Ridley v. State*, No. 98,853, 2008 WL 4416072 (Kan. App. 2008) (unpublished opinion). The State recited the following paragraph of that case that explains step two of the ineffective assistance of

7

counsel test found in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> "Even if we were to conclude that Ridley's counsel was deficient for failing to investigate and reconcile the differing criminal history scores, Ridley's ineffective assistance of counsel claim nevertheless would fail because he cannot establish that counsel's deficient performance prejudiced his defense. This requires a showing that but for counsel's erroneous advice, Ridley would not have pled guilty and would have insisted on going to trial. [Citation omitted.]" *Ridley*, 2008 WL 4416072, at *3.

The court then continued analyzing the first *Edgar* factor, finding that McKinzy's attorney had provided competent representation and again stating that McKinzy had not alleged otherwise:

> "THE COURT: Okay. Thank you for finding that case for me. And, you know, the factors of Edgar whether the defendant was represented by competent counsel, there's no allegation [the attorney] has been incompetent. Mr. McKinzy has made no such allegation. I will note both docket sheets [the attorney] has had the defendant evaluated for competency, has had the defendant evaluated for mental deficiencies and I know there was a—a long history of continuing so that the parties could—could work on a plea agreement. So I do not find that the fact that the defendant's criminal history was miscalculated, I can't find that he was not represented by competent counsel."

The court then addressed the other two *Edgar* factors and found that McKinzy had not met them. Finally, the district court said that, based on the evidence before the court, it could not "find that the defendant would have gone to trial despite knowing whether he was a B or a C," and it denied the motions.

We have two problems with the district court's ruling. The first is it ignored the defense attorney's admission of incompetence. The second problem is that the court used an incorrect test for a presentence motion to withdraw a plea. When a defendant moves to

8

withdraw his or her plea after sentencing, the defendant must show manifest injustice. This means then the defendant must meet the stricter standard for constitutionally ineffective assistance from *Strickland*, 466 U.S. at 687. See *State v. Bricker*, 292 Kan. 239, 245, 252 P.3d 118 (2011).

Under that test, a defendant must show that

- the attorney's performance fell below the objective standard of reasonableness; and
- there is a reasonable probability that but for the attorney's errors, the result of the proceeding would have been different.

*Bricker*, 292 Kan. at 245-46.

But we emphasize that rule does not apply here.

In the context of a plea withdrawal, a different result generally means that the defendant would not have pleaded guilty or no contest and would have instead proceeded to trial. *Bricker*, 292 Kan. at 252.

A judicial action constitutes an abuse of discretion if it turns on an error of law or an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). Here, because we have found both an error of law and an error of fact, we hold that the district court abused its discretion in denying McKinzy's motions to withdraw his pleas. We reverse the denial of his motions and remand both cases for further proceedings.

Because of the attorney's admissions here, we hold that upon remand a different, conflict-free counsel should be appointed to represent McKinzy. We recognize that McKinzy may not wish to pursue the withdrawal of his pleas at that time but that is something that must be decided in the district court.

Reversed and remanded with directions.